UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| ADAN OMAR, )<br>)<br>    Plaintiff )<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, )<br>Commissioner of Social Security, )<br>)<br>    Defendant ) | Civil No. 08-270-P-S |

REPORT AND RECOMMENDED DECISION[1]

The plaintiff in this Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises several issues: whether the residual functional capacity assigned to the plaintiff by the administrative law judge is supported by medical evidence; whether the administrative law judge erroneously applied the age category guidelines to this claim; whether the vocational expert's testimony complied with Social Security Ruling 00-4p; whether her testimony was responsive to the administrative law judge's hypothetical question; and, whether the administrative law judge should have found that the plaintiff suffered from three additional impairments. I recommend that the commissioner's decision be affirmed.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on March 20, 2009, pursuant to Local Rule 16.3(a)(2)(C) requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

1

Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff suffered from blindness in the right eye and left upper extremity tendinopathy, impairments that were severe but did not, singly or in combination, meet or medically equal the criteria of any of the impairments listed in Appendix 1 to Subpart P, 20 C.F.R. Part 404 (the "Listings"), Findings 3-4, Record at 271-72; that the plaintiff had the residual functional capacity for light work, except that he could do no overhead lifting and no work requiring peripheral vision from the right eye or good depth perception, Finding 5, *id*. at 272; that, given his age on the alleged onset date of February 28, 2003 (46 years old), inability to speak, read, and write English well enough to communicate adequately without a translator, unskilled past work experience, and residual functional capacity, prior to February 5, 2007, his 50th birthday, there were a significant number of jobs in the national economy that the plaintiff could have performed, Findings 7-10, *id*. at 275; that he therefore had not been under a disability, as that term is defined in the Social Security Act, at any time from February 28, 2003 through February 5, 2007, Finding 12, *id*. at 276; that, after February 5, 2007, given his age (50 years old) and the other factors already noted, application of Rule 202.09 from Appendix 2 to Subpart P, 20 C.F.R. Part 404 (the "Grid"), directed a finding of "disabled," Finding 11, *id*.; and that the plaintiff had been disabled, as that term is defined in the Social Security Act, since February 5, 2007, Finding 12, *id*.  The Appeals Council declined to review the decision, *id*. at 254-56, making it the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence.  42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).  In other words, the

determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. §S 404.1520(f), 416.920(f); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain positive evidence in support of the commissioner's findings regarding the plaintiff's residual functional capacity to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The plaintiff's arguments also implicate Step 2 of the sequential process. Although a claimant bears the burden of proof at this step, it is a *de minimis* burden, designed to do no more than screen out groundless claims. *McDonald v. Secretary of Health & Human Servs.*, 795 F.2d 1118, 1123 (1st Cir. 1986). When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or [a] combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id.* at 1124 (quoting Social Security Ruling 85-28).

## Discussion

### A.  Residual Functional Capacity

The plaintiff contends that the administrative law judge's assignment to him of a residual functional capacity for light work is not supported by any medical evidence in the record.

Plaintiff's Itemized Statement of Specific Errors ("Itemized Statement") (Docket No. 9) at 2-4. He contends that the only opinions of physical capacity on which the administrative law judge could rely were from two examining physicians, Drs. Klein and Graf. *Id.*[2] He characterizes Dr. Klein's report as specifying no limitations and Dr. Graf's as "reduc[ing] his RFC to a sub-sedentary level at best." *Id*. at 3.

     The administrative law judge rejected Dr. Graf's findings and opinions because the plaintiff saw him only once, at the request of the plaintiff's attorney, and the findings and opinions "stand in contrast to the other medical evidence." Record at 274. He set out adequate reasons for the rejection. *Id.* Dr. Klein did not fill out a Medical Source Statement form, as Dr. Graf did, *id.* at 212-15, but that does not mean that the administrative law judge could not rely on the observations and opinions recorded by Dr. Klein. He found it significant, for example, that Dr. Klein was unable to provide an objective basis for the plaintiff's subjective complaints. *Id*. at 274; *see also id.* at 95.

     Contrary to the plaintiff's contention, the administrative law judge is not limited to adopting or rejecting only specific findings on the factors that make up a physical or mental residual functional capacity, that is, use of a form like that completed by Dr. Graf or use of the terms or phrases common to the field of Social Security. An administrative law judge is not precluded from rendering common-sense judgments about functional capacity based on medical findings in the record. *Gordils v. Secretary of Health & Human Servs.*, 921 F.2d 327, 329 (1st Cir. 1990).

---

[2] The plaintiff observes, correctly, Itemized Statement at 2, that a physical residual functional capacity form completed by a "single decision maker" is not an acceptable medical source opinion and thus not available as evidence on which the administrative law judge could rely. *Eshelman v. Astrue*, 2007 WL 2021909 (D. Me. July 11, 2007), at *3.

In this case, the administrative law judge noted that the plaintiff has only light perception in his right eye, Record at 271, a finding not disputed by the plaintiff.  He also noted, from the records of Dr. Nathan James, the plaintiff's primary care physician, that the plaintiff had "a histrionic reaction to even mild palpation to the left shoulder, but it had a full range of motion" and that Dr. James stated that "pain seemed very suggestible."  *Id.*  Later, the plaintiff complained of "vague" left arm pain and left side discomfort "without any weakness or radicular pain."  *Id.*  The administrative law judge also reported that an MRI of the left shoulder "showed some infraspinatus tendinopathy but no rotator cuff tear."  *Id.*  The administrative law judge cited enough evidence, without interpreting raw medical evidence, to support his conclusions with respect to the residual functional capacity he assigned to the plaintiff.

The plaintiff takes nothing on this challenge to the decision.

### B. Borderline Age Category – Use of Grid

The plaintiff next contends that the administrative law judge should have "considered the borderline age issue."  Itemized Statement at 4.  The administrative law judge awarded the plaintiff benefits as of his 50th birthday because the "age category" of 50 to 54 years is defined by Social Security regulation as "closely approaching advanced age," 20 C.F.R. § 404.1563(d), and a claimant in that age category who has a severe impairment, an unskilled work experience, and is illiterate in English is considered, by application of Rule 202.09 of the Grid, to be disabled.  The plaintiff cites this court's decision in *Swan v. Barnhart*, 2004 WL 1529270 (D. Me. April 30, 2004), which held that when the claimant is in the "borderline range" of a particular age category, that is, within six months from the older age category, the administrative law judge should consider whether to give the claimant the benefit of the older age category.  *Id*.

at *9.  The decision also holds that a plaintiff who is 8.5 months shy of the older age category at the relevant time is not within the borderline range.  *Id.* at *9-*10.

*Swan* cannot be stretched to give the plaintiff an additional four years of benefits.  That is far beyond any reasonable extension of the six-month "borderline" time period.  *See* 20 C.F.R. §§ 404.1563(b), 416.963(b).  The plaintiff takes nothing by this argument.

### C.  Compliance with SSR 00-4p

The plaintiff's next challenge is to the vocational expert's testimony that, despite an inability to communicate in English without a translator, the plaintiff could perform the jobs of photo copy operator, outside delivery person, and cleaner, because he had previously performed the job of shipping and receiving clerk.  Itemized Statement at 5-7.  The administrative law judge's hypothetical question to the vocational expert did not include any reference to inability to communicate in English.  Record at 307-08.  However, counsel for the plaintiff then asked the vocational expert whether the jobs she had identified as available in response to the hypothetical question "would require good reading skills in the English language."  *Id.* at 312.

The vocational expert replied that the outside deliverer would have to have a working understanding of local street signs.  *Id.*  Counsel then asked whether a lack of ability to communicate easily in the English language "might impact the ability to perform either the photocopy job or the outside deliverer job."  *Id.*  The vocational expert replied:

> I don't think so, because of the fact that the shipping and receiving clerk had a GED of 3, 3, 2.  Reading level was a three, and . . . 5/99 to 10/[00].  That's about a year and a half.  Apparently, he performed that job satisfactorily for a year and a half.

*Id.* at 312-13.  The plaintiff makes much of the vocational expert's response to a following question, "And would you consider that conclusion [that the fact that the plaintiff successfully performed a job at the GED level 3 meant he could perform other jobs at that level] in any way

6

inconsistent with his need to have an interpreter for some fairly simple questions today?" *Id*. at 313. To which the vocational expert responded, "It sounds inconsistent." *Id*.

However, Social Security Ruling 00-4p, on which the plaintiff bases his attack on the vocational expert's testimony, requires only that the administrative law judge or the vocational expert "[i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence provided by V[ocational] E[xpert]s . . . and information in the Dictionary of Occupational Titles" and "[e]xplain in the determination or decision how any conflict that has been identified was resolved." Social Security Ruling 00-4p ("SSR 00-4p"), reprinted in *West's Social Security Reporting Service* Rulings (Supp. 2008), at 243. Here, the conflict was identified by counsel's question at the hearing and an explanation provided by the vocational expert. The administrative law judge's decision does not explain how the conflict was resolved – indeed, it erroneously states that there was no conflict, Record at 276 – but this error is harmless.

It is the conflict between the administrative law judge's finding that the plaintiff could not communicate in English and his hypothetical questions to the vocational expert that is at issue in this case. At oral argument, counsel for the plaintiff made clear that the itemized statement was intended also to challenge the inconsistency between the administrative law judge's finding on this point and his hypothetical questions to the vocational expert, independent of the challenge based on SSR 00-4p. Also at oral argument, counsel for the commissioner stated that the jobs identified by the vocational expert had a relatively low reading requirement and asserted that illiteracy does not necessarily preclude all jobs. The latter assertion is correct, *see, e.g., Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001) (claimant not per se disabled if he or she is illiterate), but the analysis does not stop there.

The commissioner's regulations differentiate illiteracy and inability to communicate in English. 20 C.F.R. §S 404.1564(b)(1) & (5), 416.964(b)(1) & (5). For jobs at the light exertional level, the regulations make clear that inability to communicate in English does not preclude a finding that the claimant is not disabled.

> While illiteracy or the inability to communicate in English may significantly limit an individual's vocational scope, the primary work functions in the bulk of unskilled work relate to working with things (rather than with data or people) and in these work functions at the unskilled level, literacy or ability to communicate in English has the least significance. . . .  The capability for light work, which includes the ability to do sedentary work, represents the capability for substantial numbers of such jobs. This, in turn, represents substantial vocational scope for younger individuals (age 18-49) even if illiterate or unable to communicate in English.

Section 202.00(g), Appendix 2 to Subpart P, 20 C.F.R. Part 404.

Thus, even if the administrative law judge's finding that the plaintiff did not "have the ability to speak, read, and write English well enough to communicate adequately without a translator" overrides the vocational expert's explanation, the plaintiff has not challenged the third job identified by the vocational expert, that of housekeeping cleaner, Record at 276, 309. Counsel for the plaintiff contended at the hearing that the administrative law judge's finding about the plaintiff's inability to communicate in English meant that the plaintiff "does not have the kind of fluency in English that would bring him up to a Level 1 GED."[3] However, accepting that argument would mean ignoring the regulatory language quoted above, as every such finding would necessarily result in a conclusion that the claimant was disabled. This court has repeatedly said that the existence of a single job in the national economy that the claimant can

---

[3] "GED" means general educational development. Appendix C, *Dictionary of Occupational Titles* ("DOT") (U.S. Dep't of Labor, 4th ed. 1991). There are three components to a GED rating: reasoning development, mathematical development, and language development. The latter component, which is at issue here, is rated from 1 (lowest) to 5 (highest). If an individual who could not communicate in English could not perform jobs with a language level of 1, he would not be able to perform any jobs and would be disabled, contrary to the regulation quoted above. The housekeeping cleaner job identified by the vocational expert, Record at 309, has a Level 1 language development rating. DOT § 323.687-014.

8

perform is sufficient to support a finding that he or she is not disabled. *See, e.g., Carle v. Barnhart*, 2005 WL 326938 (D. Me. Nov. 30, 2005), at *2. *See also* 20 C.F.R. §§ 404.1566(b), 416.966(b). The housekeeping cleaner job identified here thus proves sufficient.

### D. The Outside Deliverer Job

The plaintiff next points out, correctly, that the job of outside deliverer does not meet the terms of the administrative law judge's hypothetical question in any event because the administrative law judge found, and included in his hypothetical question, Record at 307, that the blindness in the plaintiff's right eye deprived him of good depth perception, and the Dictionary of Occupational Titles defines this job as requiring frequent application of depth perception. Itemized Statement at 7-8. The Dictionary of Occupational Titles does describe the job of "deliverer, outside," as requiring frequent application of depth perception, DOT § 230.663-010.[4]

However, for the reasons already noted, removing one of the three jobs identified by the vocational expert as available to the plaintiff does not require remand.

### E. Step 2 Challenges

The plaintiff contends that the administrative law judge should have found, at Step 2 of the sequential evaluation process, the following impairments to be severe at the relevant time: obesity, bilateral carpal tunnel syndrome, and a cervical spine condition. Itemized Statement at 8-13.

#### *1. Obesity*

The plaintiff admits that he did not claim disability due to obesity, and there is no mention of obesity in his testimony at the hearing, where he was represented by counsel. Record at 294-306. He argues that the administrative law judge was nonetheless required to consider

---

[4] At oral argument, counsel for the commissioner agreed that this job could not be performed by the plaintiff with the limitation assigned by the administrative law judge, right-eye blindness.

obesity as an impairment, apparently merely as a result of looking at him or by calculating his body mass index from the height and weight given in his medical records. Itemized Statement at 9. Contrary to the plaintiff's presentation, nothing in Social Security Ruling 02-1p requires an administrative law judge to consider the possibility of obesity as an impairment when it has not been brought to his or her attention by the claimant or the claimant's representative, in the absence of medical evidence that obesity is affecting one or more work-related activities adversely. While case law in some jurisdictions does require this approach, this case is distinguished by the fact that there is no medical evidence to the effect that obesity imposed any work-related limitations on the plaintiff.

Under these circumstances, it was not error for the administrative law judge to fail to discuss obesity as a possible severe impairment at Step 2. *See, e.g., Jones v. Astrue*, 2009 WL 586734 (C.D.Cal. Mar. 5, 2009), at *2; *West v. Astrue*, 2009 WL 497569 (E.D. Ark. Feb. 26, 2009), at *4; *Tolbert v. Barnhart*, 2006 WL 4045941 (D.Kan. July 26, 2006), at *3-*4 (and cases cited therein). *See also Ingram v. Astrue*, 2008 WL 2943287 (N.D.Fla. July 30, 2008), at *6 (neither diagnosis of obesity nor body mass index over 30 equates with finding of severity at Step 2; severity only indicated if obesity affected claimant's ability to perform basic work activities).

### 2. Bilateral carpal tunnel syndrome

The plaintiff contends that the administrative law judge wrongly "overlooked . . . the documented existence of carpal tunnel syndrome." Itemized Statement at 10-12. He cites medical evidence from 2000 and 2001, *id.* at 10-11, but that evidence predates the date of alleged onset, February 28, 2003, Record at 270. From the appropriate time period, he cites only a 2004

entry in the records of Dr. Klein, who examined him as a consultant, and Dr. Graf's report of his one-time referral examination in 2006. Itemized Statement at 11.

The plaintiff relies on findings recorded by Dr. Klein as follows: "[i]n the right upper extremity[,] there is sensory loss to pin over the right fourth and fifth digit with the sensation elsewhere, intact" and that the plaintiff's grip strength was "reduced bilaterally and it seems to be on the basis of increased pain in the right hand as well as the right forearm and arm." *Id.* He does not explain how these entries establish the existence of bilateral carpal tunnel syndrome or how the administrative law judge could properly reach that conclusion without interpreting raw medical data. The administrative law judge does refer to Dr. Klein's record as showing "some decreased grip strength in the left hand" and "normal muscle bulk and tone in the muscles of the upper extremities" and notes that Dr. Klein "opined that the claimant might have pain in the arms and forearms while driving or lifting, but he concluded that he was unable to provide an objective basis for the muscle complaints involving the upper and lower extremities." Record at 271. Together with Dr. Klein's conclusion that "[t]here are unknown motor and sensory deficits in the upper extremities with the patient unwilling to fully participate in manual motor testing and/or sensory testing," and his suggestion that some of the plaintiff's physical difficulties are based on "some degree of deconditioning," *id*. at 95, these entries cannot be sufficient to require the administrative law judge to find the existence of bilateral carpal tunnel syndrome at the time of Dr. Klein's examination in 2004.

The plaintiff also cites Dr. Graf's report of "markedly positive . . . tests for carpal tunnel syndrome at both wrists including Tinel's sign, carpal compression, and Phalen's test" in June 2006, along with his finding of diminution in power grip and sensory deficits in both hands, with unspecified limitations in his manipulation functions. Itemized Statement at 11. The

administrative law judge wrote that he "[gave] little weight to Dr. Graf's findings or opinion" for the following reasons:

> They stand in contrast to the other medical evidence, including the lengthy treatment record from Dr. James and Maine Medical Center. Dr. Graf reported marked restriction of cervical range of motion, which is not a symptom or finding in the treatment record. Dr. Graf was unable to move the claimant's right arm because of pain, but Dr. James' positive findings have been limited to the left upper extremity. The undersigned finds Dr. Graf's opinion statements to be exaggerated.

Record at 274.

Significantly, the administrative law judge noted that Dr. James "did not make statements regarding work restrictions after the alleged onset date. On January 23, 2006, Dr. James noted a theatrical presentation of symptoms and stated that the left arm and shoulder complaints seemed disproportionate to the examination. He commented that he suspected that the reemergence of the symptoms corresponded with pressures to reenter the workforce." *Id*.

Thus, the administrative law judge has proffered sufficient reason, based on the evidence of record, for his rejection of Dr. Graf's findings. As can be seen, contrary to the plaintiff's contention, Itemized Statement at 12, the administrative law judge did not rely solely on Dr. James' report of a telephone call with Dr. Richard Sullivan in 2001 in rejecting Dr. Graf's findings. It is also significant that Dr. Graf did not diagnose carpal tunnel syndrome, Record at 232, nor did Dr. Klein, *id*. at 95. These are the two physicians on whose reports the plaintiff relies to support his argument that the administrative law judge should have found bilateral carpal tunnel syndrome to be a serious impairment at Step 2. The only way the administrative law judge could have drawn the conclusion advocated by the plaintiff based on these reports would have been to draw conclusions from the raw medical evidence, something an

administrative law judge may not do. *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 17 (1st Cir. 1996).

*3. Cervical spine condition*

Relying on Dr. Graf's conclusion that his condition met the Listing for disorders of the spine, Record at 232, the plaintiff contends that the administrative law judge should have found that an otherwise undefined "cervical spine condition" was a severe impairment at Step 2. Itemized Statement at 12-13. He contends that Dr. Klein's report that "[s]traight leg raise is productive of low back pain exclusively[,]" Record at 94, supports Dr. Graf's conclusion that he suffered from nerve root compromise and compression, *id*. at 232. He does not suggest a reason for why low back pain caused by straight leg raising necessarily indicates a "back disorder," Itemized Statement at 13, or a cervical spine condition.

The administrative law judge addressed the plaintiff's testimony about back pain as follows:

> The claimant testified at both hearing[s] of back pain. Neither the treatment records from Dr. James (Ex. 5F and 7F) nor the consultative report from Dr. Graf (Ex. 8F) referenced back complaints (Ex. 5F, 7F, 8F). The claimant did not complain of back problems to Dr. Klein,[5] who performed the consultative examination (Ex. 3F). The claimant does not have a medically determinable back impairment.

Record at 272. It is true that Dr. Graf discusses a cervical spine "condition" only as the basis for "peripheral neuropathy of both upper extremities" and "associated muscle weakness and substantial functional restrictions in basic hand functions," *id*. at 232, but it is not back pain *per se*, which the plaintiff presses as a severe impairment at this time. The administrative law judge's focus on back pain is understandable given the plaintiff's written submissions and

---

[5] The plaintiff asserts that Dr. Klein's report of low back pain cause by straight leg raise "contradicts the ALJ's inaccurate assertion that the Plaintiff 'did not complain of back problems to Dr. Klein.'" Itemized Statement at 12. To the contrary, Dr. Klein's report does not list back pain among the plaintiff's complaints. Record at 93. The fact that some back pain was produced during the examination is not the same as the plaintiff reporting a back complaint.

13

testimony. Moreover, the administrative law judge's recitation of his reasons for rejecting Dr. Graf's conclusions, *id*. at 272, is sufficient on this point.

## Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

## *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 7th day of April, 2009.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge